**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

No. 12-1236

**IN RE: REQUEST FROM THE UNITED KINGDOM PURSUANT TO THE TREATY BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF THE UNITED KINGDOM ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS IN THE MATTER OF DOLOURS PRICE**

**UNITED STATES OF AMERICA,**
Petitioner, Appellee

v.

**TRUSTEES OF BOSTON COLLEGE,**
Movant, Appellant.

**GOVERNMENT'S REQUEST FOR MODIFICATION
OF THE COURT'S OPINION**

**(Petition for Panel Rehearing)**

The government respectfully requests that the Court modify its opinion. The opinion as currently written addresses a question regarding the district court's authority to quash subpoenas issued pursuant to a mutual legal assistance treaty between the United States and the United Kingdom (the "US-UK MLAT") that was not briefed by the parties or necessary to this appeal, which concerned only the district court's exercise of discretion in selecting documents responsive to the subpoenas. *See In re: Request from the United Kingdom Pursuant to the Treaty*

*Between the Government of the United States of America and the Government of the United Kingdom on Mutual Assistance in Criminal Matters in the Matter of Dolours Price ("In re: Dolours Price II")*, 718 F.3d 13, 21-23 (1st Cir. 2013). Whether district courts may quash MLAT subpoenas is an important issue of first impression and principles of judicial restraint counsel against reaching the issue where it was not briefed. The Court's decision to reach the issue, moreover, is inconsistent with the reasoning of its prior opinion in this case, which specifically reserved judgment on the issue when the question of quashing the subpoenas in this case was before it. *See In re: Request from the United Kingdom Pursuant to the Treaty Between the Government of the United States of America and the Government of the United Kingdom on Mutual Legal Assistance in Criminal Matters in the Matter of Dolours Price ("In re: Dolours Price I")*, 685 F.3d 1, 15 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1796 (2013). Thus, while the government is not requesting that the Court change the result in this case, it requests that the Court modify its opinion to allow for a fuller development of the issue in a case where it is squarely presented.

## Relevant Background

### 1.  District court proceedings.

This appeal and *In re: Dolours Price I* arise from successive stages of litigation over a government request for documents sought by the UK as part of its

investigation into criminal activity dating to the Northern Ireland "Troubles." In May and August 2011, a Commissioner appointed pursuant to the US-UK MLAT and 18 U.S.C. §3512[1] issued subpoenas to Boston College ("BC") seeking transcripts of interviews with participants of the Troubles collected as part of an oral history project known as the Belfast Project. *Id.* at 4-6; *see also United States v. Trustees of Boston College ("Boston College")*, 831 F. Supp. 2d 435, 440 (D. Mass. 2011). The May subpoenas requested materials associated with two interviewees, Brendan Hughes and Dolours Price, while the August subpoenas requested any materials referring to the abduction or death of Jean McConville. *In re: Dolours Price I*, 685 F.3d at 3.

BC moved to quash the subpoenas except as they pertained to Hughes. *Id.* BC's motions were supported by affidavits from two researchers – Ed Moloney and Anthony McIntyre – and argued that enforcement of the subpoenas would contravene First Amendment protections afforded to confidential academic research materials. *See Boston College*, 831 F. Supp. 2d at 453. On December 16, 2011, the district court denied the motions to quash, holding that it had discretion to quash the subpoenas,

---

[1]Section 3512 was "enacted as part of the Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086." *Id.* at 11. Section 3512 replaced an earlier statute, 28 U.S.C. §1782, used for processing MLAT requests and was intended to "provide[] for a more streamlined process." *Id.*

3

but declining to do so. *Id.* at 458-59. The court agreed, however, to conduct an *in camera* review of potentially responsive documents. *Id.* at 455, 458-59.

The district court subsequently issued two further orders. On December 27, 2011, it ordered BC to produce all of the interviews of Dolours Price. *In re: Dolours Price I*, 685 F.3d at 3-4. On January 20, 2012, it ordered BC to produce a number of transcripts the court found responsive to the August subpoenas. *Id.* at 4.

### 2. **Moloney and McIntyre Appeal.**

BC did not appeal from the denial of its motion to quash, but Moloney and McIntyre, who had sought unsuccessfully to intervene in BC's motion, did. *Id.* They argued on appeal that the motion to quash was wrongly denied and, in addition, challenged the Attorney General's decision to approve the UK's MLAT request in the first place. *In re: Dolours Price I*, 685 F.3d at 7. In its responsive brief, the government bypassed the question of whether the district court had discretion to quash subpoenas issued pursuant to an MLAT request under §3512. *Id.* at 14. The government instead argued that, assuming the court had such authority, the motion to quash was properly denied because BC, Moloney, and McIntyre had not identified interests that outweighed the government's interest in the documents. *Id.*

This Court affirmed the district court's denial of the motions to quash. *Id.* at 15. In doing so, the Court did not decide whether the district court had discretion

under "the laws of the United States, particularly 18 U.S.C. §3512, to quash the subpoenas," holding instead that no valid grounds for quashing were presented. *Id.* at 14. The Court noted, however, that the Ninth and Eleventh Circuits had declined to find that district courts had discretion to quash MLAT subpoenas issued pursuant to an earlier statute, 28 U.S.C. §1782, because the statute provided "a procedure for executing requests, but not . . . a means for deciding whether or not to grant or deny a request so made." *Id.* (quoting *In re Premises Located at 840 140th Ave NE, Bellevue, Washington ("In re Premises")*, 634 F.3d 557, 570 (9th Cir. 2011), in turn quoting *In re Commissioner's Subpoenas*, 325 F.3d 1287, 1297 (11th Cir. 2003)).

Separately, the Court stated that the propriety of the district court's *in camera* review was not before the Court. *Id.* at 8 n. 9 ("No party raises on appeal any question whether the district court had discretion to review the materials to determine whether they fell within the scope of the subpoenas or acted within any discretion it had."). The Court distinguished the responsiveness issue from the question of authority to quash, noting that "the government ha[d] assumed arguendo that the district court had discretion to quash (going beyond the issue of whether the documents were responsive to the terms of the subpoenas)." *Id.* at 14.

### 3. BC appeal.

While Moloney and McIntyre's appeal was pending, BC appealed from the district court's January 20, 2012 order. BC's opening brief, filed before *In re: Dolours Price I* issued, argued that the Belfast Project materials were entitled to "special protection" as confidential research materials and that the court should have employed a heightened "direct relevance" standard in deciding which documents were responsive. [*See* Br:28-37].[2]

Before the government filed its responsive brief, this Court decided *In re: Dolours Price I*, which held that no requirement of heightened scrutiny or particularized relevance applied to these materials. *See* 685 F.3d at 17-18. Based on this, the government argued in its response that BC's "direct relevance" argument was foreclosed and that, under ordinary relevance standards, the district court had not abused its discretion. [*See* GBr:17-24]. The government noted its position that the district court lacked discretion to quash the subpoenas based on the First Amendment claims argued here (because they did not assert a cognizable interest), but argued that the Court did not have to reach that issue because the court's responsiveness review was proper. [GBr:17-18].

---

[2]Citations are as follows. The citations "[Br:_]," "[GBr:_]," and "[Reply:_]," refer, respectively, to BC's opening brief, the government's brief, and BC's reply brief. The citation "[D._]" refers to a docket entry.

In its reply brief, BC contended that its "direct relevance" argument remained viable. BC noted the Court's "careful description" in *In re: Dolours Price I* that it was not addressing the district court's review of the documents for responsiveness. [Reply:8-9]. Thus, the question "remain[ed] alive . . . whether the district court erred in deciding which Belfast Project interview materials are responsive to the subpoenas' request for materials 'containing information regarding the abduction or death of Mrs. Jean McConville.'" [Reply:8]. BC did not appear to argue that the question of a district court's discretion to quash was before the Court.[3]

### 4.   **This Court's opinion.**

On May 31, 2013, this Court issued its decision affirming in part and reversing in part the January 20, 2012 order. *See In re: Dolours Price II*, 718 F.3d at 27-28. In framing the issues on appeal, the Court stated – apparently in error – that BC had asked the Court to reach the question of a district court's discretion to quash. *Id.* at 20. The Court's opinion also indicated that it viewed the issues of discretion to quash and review for responsiveness as overlapping, stating that the arguments on appeal "require[d] [the Court] to determine whether the district court had discretion to rule

---

[3] Although this argument does not appear in the public portions of BC's brief, the government recognizes that BC filed portions of its brief *ex parte*.

upon the motion to quash and to perform an *in camera* review of the subpoenaed materials as part of its deliberation process." *Id.* at 21.

The Court then addressed the district court's discretion to quash, beginning by considering the language of the US-UK MLAT and §3512. *Id.* at 21-22. Finding that analysis inconclusive, the Court held that separation of powers principles required that courts have a role in "checking and balancing" the interests at play in enforcing MLAT subpoenas and that nothing in the US-UK MLAT or §3512 showed that the courts "have been divested of [their] inherent judicial role" in this context. *Id.* at 22-23. The Court also found that an ordinary relevance standard applied but that, under this standard, some of the documents selected by the district court should not have been ordered turned over. *Id.* at 23-28.

## **ARGUMENT**

In this appeal, the parties were content to litigate only the issue of whether certain documents were responsive to the subpoenas, not whether the district court had the authority to quash, or should have quashed, the subpoenas. In the absence of full briefing by the parties, this Court should have deferred consideration of the court's authority to quash, which a prior panel had recognized to be both important and complicated. In addition, the manner in which the Court addressed the issue may create confusion for future litigants and frustrate the purposes of the US-UK MLAT

and similar agreements, which seek to create an efficient process for responding to international requests for assistance. The government therefore respectfully requests that the Court modify its opinion to omit its discussion of this issue.

### A.    The issue was not before the Court or necessary to its decision.

The Court's opinion reflects that it reached the question of the district court's discretion to quash because it considered the court's responsiveness review to be "part of its deliberation process" on the motion to quash. 718 F.3d at 21. That characterization is inconsistent with the district court record, the parties' arguments on appeal, and this Court's decision in *In re: Dolours Price I*.

As noted above, the sequence of the district court's orders reflects that it denied BC's motions to quash with respect to all of the government's subpoenas on December 16. *See Boston College*, 831 F. Supp.2d at 459. Only after that did the court engage in the process of reviewing the documents, a process that it characterized as determining responsiveness, not revisiting whether the subpoenas should be quashed. [*See* D.47]. Consistent with the foregoing, the briefing in this appeal assumed the distinct nature of the proceedings. Neither the government nor BC asked the Court to decide whether the subpoenas should have been quashed. To the contrary, both parties focused on whether the court acted properly in choosing

9

responsive documents. [*See* GBr.16 (characterizing question on appeal as whether court abused discretion in selecting responsive documents); Reply:6 (same)].

This Court's decision in *In re: Dolours Price I* reflected the same understanding. The Court expressly distinguished between the bypassed authority-to-quash issue, which addressed whether §3512 afforded district courts a basis "for deciding whether or not to grant or deny a request" for an MLAT subpoena, 685 F.3d at 14, and the logically separate question of the district court's authority to determine "whether [certain] documents were responsive to the terms of the subpoenas," which was not before the Court at all. *Id.*

Resolution of the district court's authority to quash was also not necessary, as this Court apparently believed, to its holding that the district court had erred. *See* 718 F.3d at 21 (reasoning that it could reach the question of whether the court abused its discretion only if it first found such discretion existed). Numerous precedents recognize "the traditional authority of trial judges to conduct *in camera* [proceedings]" with respect to disputed matters. *Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596, 609 n. 25 (1982) (discussing use of *in camera* proceedings to determine if minor victim in sex crime case may testify without the public present); *see also Georgia v. McCollum*, 505 U.S. 42, 58 (1992) (noting availability of *in camera* proceedings under *Batson v. Kentucky*, 476 U.S. 79 (1986),

where "the explanation for a challenge would entail confidential communications or reveal trial strategy"). This authority includes the ability to review documents whose disclosure is disputed. *See United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011) (affirming district court authority, in litigation involving disclosures pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), to "conduct an *in camera* review of the disputed materials"). Thus, the court's exercise of discretion to identify responsive documents *in camera* did not depend on its authority to quash.

Given the treatment of responsiveness as a separate issue by the district court, the parties, and this Court in the earlier appeal; the lack of any need to do otherwise; and the lack of briefing by the parties of this issue, this Court should have reserved the question of discretion to quash for another day. Indeed, the Court arguably was precluded from reaching the issue on law of the case grounds. By affirming the district court's denial of BC's motion to quash, *In re: Dolours Price I* fully adjudicated the question of whether any objection implicating the district court's discretion to quash was presented, and concluded that none had been. In light of this, it is difficult to see how the question was open to be addressed in this appeal.

Even were the Court not precluded from addressing the issue, however, it was inadvisable to do so. As the Court's opinion reflects, a court's discretion to quash presents a complex question implicating the language of §3512 and the US-UK

MLAT, as well as constitutional concerns. These issues would benefit from being addressed in a case where the matter is squarely presented and fully briefed.

### B. The Court's treatment of the issue may frustrate the purposes of the US-UK MLAT and create confusion.

The Court's analysis in this case also may frustrate the purposes of the US-UK MLAT and other similar agreements as well as Congress's intent that §3512 create a "more streamlined process" for complying with MLAT requests. *In re: Dolours Price I*, 685 F.3d at 11.[4] As this Court's earlier opinion recognized, the language of the US-UK MLAT and general principles of treaty interpretation weigh against the recognition of private rights that would "impede the execution of a request" under the treaty. *Id.* at 11-12. In addition, existing precedents support the view that, if courts retain discretion to refuse to give effect to MLAT subpoenas, that authority may be limited to extreme cases, such as where there is credible evidence that honoring the request would "depart[] from our concepts of fundamental due process and fairness."

---

[4] *See also* 155 CONG. REC. S6807-01, S6809-S6810 (2009) (explaining that the proposed legislation was designed to make it "easier for the United States to respond to these requests by allowing them to be centralized and by putting the process for handling them within a clear statutory system.") (Statement of Sen. Whitehouse); 155 CONG. REC. H10092-01, H10094 (2009) (Statement of Rep. Schiff) (stating that the law would enable the United States to respond "more quickly . . . to foreign evidence requests. These efforts will assist [the United States] with [its] investigations as foreign authorities will be urged to respond in kind to [the United States'] evidence requests in a speedy manner").

*In re Premises*, 634 F.3d at 571-72 (citation omitted); *see also In re: Dolours Price II*, 718 F.3d at 22 (noting that *In re Premises* was cited with approval in *In re: Dolours Price I*). This result is supported by the structure of the MLAT process, which assigns to the executive branch the primary responsibility for determining what requests should be honored, *see In re Premises,* 634 F.2d at 571 (noting that a district court could not quash a subpoena on grounds of burdensomeness, because "it is reasonable to conclude that the United States government effectively has weighed those factors by agreeing to the MLAT and by agreeing to the particular request"), and by the fact that the field of foreign affairs "is one that 'the Constitution entrusts to the President and the Congress.'" *Id.* at 572-73 (quoting *Zschernig v. Miller*, 389 U.S. 429, 432 (1968)).

This Court's opinion as currently written, however, does not reflect any comparable limits on the authority it holds that district courts possess to "supervise the enforcement of [MLAT] subpoenas." *In re: Dolours Price II*, 718 F.3d at 23. As a result, the opinion is likely to create substantial uncertainty and lead to further litigation regarding the appropriate scope of the district court's authority to act on such subpoenas. Moreover, because the opinion treats the *in camera* proceedings in this case as part and parcel of the district court's authority to quash, it may be read as suggesting that access to such proceedings is required in order to fulfill the separation

of powers principles the opinion discusses. Routine use of such protracted procedures, however, would significantly frustrate the purposes of the MLAT process and impede the government's ability to efficiently fulfill its treaty obligations.

### C. The opinion should be modified to omit this discussion.

In light of the foregoing, the government respectfully requests that the Court modify its opinion. As noted above, the discussion in paragraphs three and four of part II.B. is inaccurate. BC did not request that this Court address the district court's discretion to quash and the government did not dispute that the district court had authority to conduct an *in camera* review for responsiveness, although it disputed whether BC's claims provided a basis for such review. Moreover, the discussion of discretion to quash is unnecessary and should be omitted. Thus, the Court's opinion should be modified as follows:

- The third sentence of the third paragraph of II.B. (which inaccurately states that BC requested a ruling on discretion to quash) should be omitted and the fourth sentence modified to omit reference to the previous sentence.[5]

---

[5] The fourth sentence, as modified, would read:

> BC thus requests that we now rule that a heightened sensitivity standard should be applied here because of the confidential nature of the Project and that only materials that are directly responsive to the subpoenas should be released.

14

- The fourth paragraph of II.B. should be modified to correctly state the government's position as follows:

  The government, while it argues that only the Attorney General, not the courts, has discretion to decline, delay or narrow a request under the treaty, does not dispute that the district court had authority to perform an *in camera* review of the documents to determine their responsiveness to the subpoena. It proposes, however, that an ordinary relevance standard be applied in this case rather than a direct relevance standard, and urges us to find that the district court's review properly met that standard.

- The fifth paragraph of II.B. and the entirety of II.C. should be omitted.

- The first paragraph of Section II.D. should be omitted.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court modify its opinion as set forth above.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:   /s/ *Randall E. Kromm*
     RANDALL E. KROMM
     Assistant U.S. Attorney

## Certificate of Service

I, Randall E. Kromm, AUSA, hereby certify that on August 2, 2013, I electronically served a copy of the foregoing document on the following registered participants of the CM/ECF system:

Jeffrey Swope, Esq.
Nicholas A. Soivilien, Esq.
Edwards Wildman Palmer LLP
111 Huntington Ave.
Boston, MA 02199

/s/ *Randall E. Kromm*
RANDALL E. KROMM
Assistant U.S. Attorney